IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| THE CINCINNATI | ) | |
|---|---|---|
| INSURANCE CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-4238-CV-C-NKL |
| | ) | |
| SAWMILL HYDRAULICS, INC., | ) | |
| and | ) | |
| GARY EADS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Pending before the Court are The Cincinnati Insurance Company's ("Cincinnati") Motion for Summary Judgment [Doc. # 32] and Gary Eads's ("Eads") Motion for Summary Judgment [Doc. # 36]. For the reasons set forth below, the Court grants Cincinnati's Motion and denies Eads's Motion.

Also pending is Eads's Motion to Strike the Affidavit of Barry Schweinfest ("Schweinfest") [Doc. # 38]. In his Reply in support of that Motion, Eads expressed his desire to withdraw it. *See* Reply [Doc. # 41]. The Court therefore will deny Eads's Motion as moot.

**I. Background**

    **A. Overview**

Cincinnati is an Ohio corporation that provided two insurance policies to Sawmill

1

Hydraulics, Inc. ("Sawmill"). Sawmill is a manufacturer of sawmill equipment. Sawmill manufactured and sold a Helle log turner to Gastineau Lumber & Pallet, Inc. ("Gastineau). On October 30, 1996, Eads was employed by Gastineau and was injured while performing maintenance on the Helle log turner. Eads sued Sawmill for his injuries in Jackson County Circuit Court. That case is styled *Gary Eads v. Sawmill Hydraulics, Inc.*, Case No. 01-CV-226200 ("Eads case").

The original Petition in the Eads case pursued a strict liability claim sounding in tort. *See* Cincinnati Suggestions [Doc. # 33] at Ex. D. The Amended Petition in the Eads case added a second count for negligence, which stated that Sawmill negligently (1) designed, manufactured, and sold the log turner in such a fashion that the hydraulic boom could not be locked or disengaged during normal maintenance; (2) designed, manufactured, and sold the log turner in such a way that frequent maintenance and tightening of bolts was necessary; (3) failed to provide adequate warnings about the dangers of routine maintenance; and (4) failed to provide adequate instructions concerning the safe methods of performing routine maintenance. *Id.* at Ex. E.

Sawmill submitted Eads's claim to Cincinnati for coverage, but Cincinnati rejected Sawmill's request. On March 28, 2002, a representative of Sawmill executed a Waiver of Coverage which stated,

> Sawmill Hydraulics hereby drops any claim for coverage from Cincinnati under the above referenced policies in connection with the Gary Eads lawsuit, and concedes and stipulates that Cincinnati owes no coverage with respect to that claim.

2

*Id.* at Ex. F.

Subsequently, Sawmill and Eads reached a settlement of the Jackson County case. As part of the settlement, Sawmill stipulated that it caused Eads's injuries.

> Plaintiff's injuries were caused by defendant and resulted from certain uninstalled equipment on the log turner that would have allowed plaintiff to prevent the hydraulic boom of the log turner from lowering during maintenance. Without such equipment, the log turner was unreasonably dangerous when put to its reasonably anticipated use by plaintiff, and defendant was negligent in designing, manufacturing, and selling the log turner in such a condition.

*See* Eads's Suggestions [Doc. # 37] at Ex. 2, ¶ 6. Pursuant to the parties' settlement agreement, the Jackson County Circuit Court entered a final judgment in favor of Eads in the amount of $2,000,000. Cincinnati Insurance then filed suit in this Court seeking a declaratory judgment that Sawmill's insurance policies issued by Cincinnati do not provide coverage for Eads's injuries.

### B. Products-Completed Operations Hazard

This dispute turns on the interpretation of an exclusion provision in Cincinnati's policies which covered Sawmill at the time of Eads's accident.[1] If the exclusion applies, Cincinnati is entitled to summary judgment. If the exclusion does not apply, then summary judgment must be entered in favor of Eads.

The relevant exclusion provides that: "This insurance does not apply to 'bodily injury' or 'property damage' which is the result of a 'products-completed operations

---

[1] Sawmill had a primary and excess insurance policy with Cincinnati at the time Eads was injured. Both policies are subject to the same exclusion.

hazard.'" Endorsement Form CG21041185. Section V(14) of the Primary Policy defines a products-completed operations hazard as follows:

    a.    "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)    Products that are still in your physical possession; or

        (2)    Work that has not yet been completed or abandoned.

    b.    "Your work" will be deemed completed at the earliest of the following times:

        (1)    When all of the work called for in your contract has been completed.

\*\*\*

    c.    This hazard does not include "bodily injury" or "property damage" arising out of:

        (1)    The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

        (2)    The existence of tools, uninstalled equipment or abandoned or unused materials; or

        (3)    Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

*Id.* at § V(14).

## II. Discussion

This case is before the Court on diversity jurisdiction so state law will control. *See Home Ins. Co. v. Aetna Ins. Co.*, 236 F.3d 927, 929 (8th Cir. 2001) (citing *Langley v.*

4

*Allstate Ins. Co.*, 995 F.2d 841, 844 (8th Cir. 1993)). The parties appear to agree that Illinois substantive law applies to this matter. *See* Eads's Suggestions [Doc. # 37] at p. 9; Cincinnati's Opposition [Doc. # 46] at p. 10.

"The construction of an insurance policy is a question of law." *Pekin Ins. Co. v. Estate of Goben*, 707 N.E.2d 1259, 1262 (Ill. App. Ct. 1999). "An insurance policy must be construed according to the sense and the meaning of the terms, and if the language is clear and unambiguous, it must be given its plain, ordinary, and popular sense." *Sims v. Allstate Ins. Co.*, ___ N.E.2d ___, 2006 WL 1495110 *2 (Ill. App. Ct. May 31, 2006) (citing *Pekin*, 707 N.E.2d at 1262).

On their face, Cincinnati's policies exclude from coverage the injury which Eads sustained. The products-completed exclusion does not provide coverage for bodily injuries that occurred "away from [Sawmill's] premises" due to Sawmill's product. Eads was injured while he was on Gastineau's premises and while he was working for Gastineau. Moreover, Eads was injured while working on a machine manufactured by Sawmill that was no longer under Sawmill's control or in its possession. In fact, Sawmill completed the log turner when it finished manufacturing it and delivered it to Gastineau. Thus, the clear language of Cincinnati's policies exclude coverage for Eads's injury.

Eads, however, claims that an exception to the exclusion clause applies. In his state court case against Sawmill, he alleged the absence of a safety device on the log turner. Subsection (c)(2) of the products-completed operation hazard exclusion states:

This hazard does not include "bodily injury" or "property damage" arising

out of:

\*\*\*

(2)  The existence of tools, *uninstalled equipment* or abandoned or
unused materials.

\*\*\*

*See* Cincinnati Suggestions [Doc. # 33] at Ex. A, § V(14)(c)(2) (emphasis added). Eads asserts that because his state law claim was based on the absence of a safety device on the log turner, the uninstalled equipment exception to the exclusion applies.

The general definition of the term "existence" is (1) the fact or state of existing; . . . or (3) specific presence. WEBSTER'S II NEW COLLEGIATE DICTIONARY 393 (1995). Thus, applying the regular meaning of the word "existence" to the uninstalled equipment exception leads to the conclusion that the equipment at issue must be present. There is nothing in the definition that suggests the exception applies when safety equipment is not present.

The language of the exception also implies that the equipment must be present because "equipment" is modified by the adjective "uninstalled." If the exception was intended to cover absent equipment, then the term "uninstalled" would be superfluous; if equipment is absent, it is uninstalled and the modifier becomes meaningless.

Instead of the tortured interpretation of the exception proposed by Eads, the Court finds the uninstalled equipment exception applies to "tools, equipment and materials which on completion of an operation should have been removed by the insured from the

6

premises where the operation occurred but which, instead, were abandoned there by the insured and later were instrumental in causing an accident." *See U.S. Sanitary Specialties Corp. v. Globe Indemnity Co.*, 204 F.2d 774, 777 (7th Cir. 1953) (applying Illinois law).

Another court has reached a similar result in *Shelter Mutual Ins. Co. v. DeShazo*, 955 S.W.2d 234 (Mo. Ct. App. 1997). In *DeShazo*, claimants were injured when the deck they were standing on collapsed. John DeShazo ("DeShazo") constructed the deck and he failed to install blocks to support the wooden columns of the deck and failed to install the bolts that were used to secure the deck to the home. DeShazo had an insurance policy with a products-completed exclusion and an uninstalled equipment exception similar to the one in Cincinnati's insurance policies. Like Eads, the claimants, in *DeShazo*, argued that the exception applied because the absence of the equipment caused the collapse and the equipment was therefore "uninstalled." The court summarily rejected this claim and granted summary judgment in favor of the insurance company.

In *Travelers Ins. Co. v. Ty Co. Services, Inc.*, 399 S.E.2d 562 (Ga. Ct. App. 1990), another court reached the same result. It held that the phrase "uninstalled equipment" was intended to apply to "equipment placed on the premises in connection with the insured's operations." *Id.* at 564. To hold otherwise, the court held, would mean that "the policy would provide coverage for activities completely disassociated with the insured's operations and over which the insured has no control." *Id.*

It is clear that the "uninstalled equipment" exception in the Cincinnati policy applies to equipment that is present; it does not encompass claims that are based on the

7

absence of equipment.

Because the language of Cincinnati's policies are clear, there is no need to strictly construe it against Cincinnati. "Although it is true that limitations of an insurer's liability must be construed liberally in favor of the policyholder, the rule comes into play only where there is an ambiguity." *Menke v. Country Mutual Ins. Co.*, 401 N.E.2d 539,542 (Ill. 1980). A provision is ambiguous if it "is subject to more than one reasonable interpretation." *Economy Fire & Casualty Co. v. Bassett*, 525 N.E.2d 539, 542 (Ill. App. Ct. 1988). An ambiguity does not exist merely because the parties disagree on its meaning, *Johnstowne Centre Partnership v. Chin*, 458 N.E.2d 480, 481-82 (Ill. 1980); because creative possibilities can be suggested. *Bruder v. Country Mutual Ins. Co.*, 620 N.E.2d 355, 363 (Ill. 1993); or where the ambiguity is the result of "perversions of plain language." *Miller v. Madison County Mutual Automobile Ins. Co.*, 197 N.E.2d 153, 156 (Ill. App. Ct. 1964).

Cincinnati also is not bound by the language in the stipulated judgment entered into between Eads and Sawmill. Paragraph 6 of the stipulated judgment stated:

> Plaintiff's injuries were caused by defendant and resulted from certain uninstalled equipment on the log turner that would have allowed plaintiff to prevent th hydraulic boom of the log turner from lowering during maintenance. Without such equipment, the log turner was unreasonably dangerous when put to its reasonably anticipated used by plaintiff, and defendant was negligent in designing, manufacturing, and selling the log turner in such a condition.

*See* Eads's Suggestions [Doc. # 37] at Ex. 2, ¶ 6. The stipulated judgment does not bind Cincinnati because it was not a party to the stipulation. Moreover, the "uninstalled

8

equipment" phrase in the Cincinnati policy is a term of art, unaffected by generic terms used to describe Eads's claim in his Jackson County case.

Because Cincinnati has shown that the "products-completed" hazard exclusion applies and the "uninstalled equipment" exception does not apply, the Court grants summary judgment in favor of Cincinnati.[2]

## III. Conclusion

Accordingly, it is hereby

(1) ORDERED that Cincinnati's Motion for Summary Judgment [Doc. # 32] is GRANTED;

(2) ORDERED that Eads's Motion for Summary Judgment [Doc. # 36] is DENIED; and

(3) ORDERED that Eads's Motion to Strike [Doc. # 38] is DENIED as moot.

           s/ Nanette K. Laughrey
           NANETTE K. LAUGHREY
           United States District Judge

DATE: June 27, 2006
Jefferson City, Missouri

---

[2] The parties dispute which of them bears the burden of proving the uninstalled equipment exception which is contained in Section V (14) (c) of the primary policy. Even assuming Cincinnati bears the burden on this issue, the Court finds that it has shown that the exception does not apply. It is, therefore, unnecessary to determine who has the burden of proof on this issue.